**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Kevin Saunders, Tony Moy, Eric Orman, Michael Barylski, Grant Moellering, Kenneth Cooper, Christopher Hancock, Martin Cocita, Mick Verdeck, Zachary Gray, and Greg Gimelstein, individually and on behalf of others similarly situated, | Civil No. 05-1437 (DWF/SRN) |

Plaintiffs,

v.                                                                  **MEMORANDUM**
                                                                     **OPINION AND ORDER**

Ace Mortgage Funding, Inc.,
Richard M. Hall, and Robert Gregory,

Defendants.

---

Michele R. Fisher, Esq., Sarah M. Fleegel, Esq., Paul J. Lukas, Esq., Donald H. Nichols, Esq., Jill M. Novak, Esq., and Rachhana T. Srey, Esq., Nichols Kaster & Anderson PLLP; and Marguerite M. Longoria, Esq., and Sam J. Smith, Esq., Burr & Smith, LLP, counsel for Plaintiffs.

R. Anthony Prather, Esq., and Shannon M. Shaw, Esq., Barnes & Thornburg, LLP; and Kevin A. Finnerty, Esq., Peder Jens Nestingen, Esq., and Robert R. Reinhart, Esq., Dorsey & Whitney, LLP, counsel for Defendants.

---

**INTRODUCTION**

In this collective action, Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and seek overtime compensation and minimum wage payments from Defendants Ace Mortgage Funding, Inc. ("Ace"), Ace's President

Richard M. Hall, and its Vice President Robert Gregory.[1]  This matter is before the Court

pursuant to cross-motions for partial summary judgment and a third motion brought by

Plaintiffs' in which they request permission to send a second notice of this lawsuit to

certain Ace loan officers, to compel production of an updated class list, and to equitably

toll the applicable statute of limitations.  For the reasons set forth below, the Court grants

in part and denies in part Plaintiffs' Amended Motion for Partial Summary Judgment;

denies Defendants' Motion for Partial Summary Judgment; and denies Plaintiffs' Motion

for Second Notice, to Compel Production of Updated Class List, and for Equitable

Tolling.

## BACKGROUND

Hall and Gregory incorporated Ace in 1998 to act as a mortgage broker.  As such,

Ace matches borrowers with lenders for a fee.  Ace has no underwriters; rather, Ace

submits its loans to a lender, which has its own underwriter who approves the loan.  Ace's

services are not for resale.  Ace currently contains branch offices in at least twenty-six

states.  Ace is licensed to broker loans in forty-five states and to lend mortgage funds in

thirteen states.

Although Ace primarily brokers loans, Ace has engaged in a small amount of

direct lending.  Specifically, approximately 1-6% of Ace's loans have involved direct

---

[1]      In their First Amended Complaint, Plaintiffs also added six putative state class
actions seeking minimum wage and overtime compensation pursuant to state laws.

(Footnote Continued on Next Page)

lending during the relevant time periods.  Ace has worked with banks that engage in

"table funding," whereby the bank provides the funding for the loan but requires the loan

to be closed in Ace's name.  (Aff. of Kevin Finnerty in Opp'n to Pls.' Mot. for Partial

Summ. J. ("Finnerty Aff."), Ex. 1 at 78.)  In February 2005, Ace stopped working with

banks that table fund loans.  In June 2004, Ace began working with a few "corresponding

lenders."  (Aff. of Robert Gregory in Opp'n to Pls.' Mot. for Partial Summ. J. ("Gregory

Aff.") at ¶ 15.)  Under that arrangement, Ace closes a small number of loans in its own

name using the company's warehouse line of credit.  One of approximately ten

corresponding lenders underwrites the loan and becomes the end lender because Ace

transfers the loan to it almost immediately after closing.

     The vast majority of Ace's revenue and profits have been made as a mortgage

broker.  For example, in 2004, Ace closed on fifteen loans with a corresponding lender,

which constituted only 0.09% of Ace's 15,815 loans during that period.  These loans

accounted for only $1.47 million, or 0.08%, of the $1.79 billion total volume in loans Ace

handled that year.  Further, in 2005, Ace closed 192 warehouse loans, which accounted

for approximately $21.2 million of its business and represented only 0.91% of Ace's

21,026 loans and 0.76% of Ace's approximately $2.80 billion loan value.

     Plaintiffs are former Ace loan officers.  Ace's loan officers are salespersons.

Ace's loan officers conduct almost all of their work at Ace's loan offices using Ace's

---

(Footnote Continued From Previous Page)

3

phones and computers.  Ace prohibits its loan officers from "cold calling" potential customers.  (Finnerty Aff., Ex. 2 at 109.)  Instead, Ace procures sales by advertising heavily and paying to acquire leads from prospective mortgage seekers.  The amount of loan officers' work fluctuates because neither Ace nor its loan officers know when they will be asked to respond to an incoming call from a prospective client based on the fact that Ace does not place ads at regular intervals.  Additionally, the work fluctuates because of the rise and decline of interest rates, seasonal cycles in loan demand, and various other changes in the economy.

Until approximately June 2005, Ace paid its loan officers on a one-hundred percent commission basis.  Hall and Gregory chose this payment method because they had been paid on a straight commission basis when they worked as loan officers at a different company.  Under this compensation structure, loan officers received no compensation during pay periods when they received no commission payments.  The commission percentages increased as sales volume increased.  Each loan officer that Ace hired signed an employment contract agreeing to this method of payment.

In late 2004, the Department of Labor ("DOL") in Arizona contacted Ace.  The DOL explained that a former Ace loan officer, who worked for Ace for about thirty days, complained that Ace had not paid him minimum wage or overtime compensation.  Ace agreed and immediately resolved the situation by paying the individual the money owed. In early 2005, Hall read in a trade publication about the existence of lawsuits in which loan officers were alleging that their employers failed to pay them overtime

4

compensation.  Based on this knowledge, Ace contacted several DOL offices to discuss

the lawsuits.  Ace specifically contacted a DOL office in Pittsburgh because one of the

articles that Hall read contained a quote from an employee in that office.  Ace asked the

DOL for advice regarding its method of compensating loan officers.  The DOL suggested

that Ace may want to alter its method of paying loan officers to "be safe."  (Finnerty Aff.,

Ex. 2 at 39.)  The DOL also suggested a method in which Ace could structure its

compensation to avoid paying overtime, even if loan officers were classified as

non-exempt under the FLSA.

　　　After talking with the DOL, Ace's management met to discuss the classification

and compensation of loan officers.  Ace then contacted the law firm of Stewart & Irwin

for its opinion regarding a possible new compensation method for loan officers.  Acting

on the legal advice it received, Ace concluded that to "be safe" it should re-classify loan

officers as non-exempt and institute a new pay plan.  Ace sought to ensure that loan

officers were earning at least a minimum wage or salary, while continuing to provide the

incentive for loan officers to earn high wages.  Ace developed a new compensation

scheme called the "Broker Pay Plan" (also referred to as "the Plan").

　　　The Broker Pay Plan called for a guaranteed weekly pay equivalent to the

minimum wage for forty hours per week, plus a guarantee of time-and-a-half for twenty

more hours per week.  In addition to this compensation, loan officers were eligible to

receive a commission.  Although the Broker Pay Plan required Ace to compensate loan

officers for a total of sixty hours of work, Ace believed that the loan officer position only

5

required about forty hours of work per week.  Additionally, under the Plan, loan officers were not allowed to work in excess of sixty hours without obtaining written permission in advance.

Lisa Price, an attorney with Stewart & Irwin, reviewed and made limited edits to the proposed Broker Pay Plan.  Before instituting the plan, Ace submitted a copy of the Plan to the DOL and asked the DOL for written approval.  The DOL approved the Plan over the telephone but did not provide a written approval, stating that the DOL never provides written approvals.  On June 1, 2005, Ace implemented the Broker Pay Plan. Ace provided each loan officer with a new contract that explained the new compensation plan and asked each officer to accept the Plan in writing.

Under the Broker Pay Plan, loan officers are classified as non-exempt under the FLSA.  Pursuant to the Plan, Ace pays each loan officer $5.15 per hour (federal minimum wage) multiplied by forty hours per week and $5.15 x 1.5 multiplied by twenty hours per week.  Even if the loan officer works only forty hours, Ace guarantees payment to the officer for sixty hours of work per week.  If the loan officer sells more than his or her guaranteed payment during a pay period, the guarantee component is incorporated into the commission.  If the loan officer fails to sell enough loans to make a commission greater than or equal to his guaranteed payment, he or she receives the guaranteed payment, but this amount is treated as a draw and offset from future commissions in subsequent pay periods.

Under the Broker Pay Plan, loan officers are required to submit weekly time

6

records.  Plaintiffs allege that Ace ignores these time records unless the loan officer

works more than sixty hours in a workweek.  Loan officers are required to obtain prior

approval from an Assistant Vice President to work more than sixty hours in a given week.

Since Ace implemented the Broker Pay Plan in June 2005, not one loan officer has

claimed to have worked more than sixty hours in a single week.

On July 18, 2005, five of Ace's loan officers brought this collective action under

the FLSA seeking minimum wage and overtime compensation on behalf of themselves

and others similarly situated.  Plaintiffs then brought a motion for partial summary

judgment on four issues.  Specifically, Plaintiffs assert that, as a matter of law:  (1) Ace

does not qualify for the retail sales or service establishment exemption; (2) the Broker

Pay Plan violates the FLSA; (3) a three-year statute of limitations applies because Ace

willfully violated the FLSA; and (4) Plaintiffs are entitled to liquidated damages.  Shortly

thereafter, Ace brought a motion for partial summary judgment on the first three issues

that Plaintiffs raised.  Specifically, Ace asserts that, as a matter of law:  (1) it is a retail or

service establishment; (2) the Broker Pay Plan is lawful; (3) and there is no evidence to

support a finding of willfulness and therefore the two-year statute of limitations applies.

Additionally, Plaintiffs request that the Court grant it permission to send a second notice

of this lawsuit to all loan officers employed by Ace between July 18, 2002, and July 18,

2005, to compel production of an updated class list, and to equitably toll the applicable

statute of limitations.

**DISCUSSION**

## I.    Motions for Partial Summary Judgment

### A.    Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B.**      **Retail or Service Establishment Exemption**[2]

---

The FLSA requires employers to compensate employees engaged in commerce for work weeks of longer than forty hours at a rate of not less than one and one-half times the employee's regular rate of compensation.  29 U.S.C. § 207(a)(1).  This provision, however, does not apply to employees who fall within one of the exemptions set forth under the Act.  Exemptions to the FLSA should be narrowly construed.  *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).  But "generalizations about interpretation, such as that exemptions from remedial statutes should be narrowly construed, are at best tie-breakers. . . ."  *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1186 (8th Cir. 1993) (quoting *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177 (7th Cir. 1987)).  An employer claiming an exemption from the FLSA's overtime requirements bears the burden of establishing that the exemption applies.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974).

Here, the parties dispute whether Plaintiffs fall within the retail or service establishment exemption and are therefore exempt from the FLSA's overtime provision.  The retail or service establishment exemption under 29 U.S.C. § 207(i) of the FLSA provides, in relevant part:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if:
> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title; and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

Specifically, the parties ask the Court to decide, as a matter of law, whether Ace satisfies the threshold requirement that it be a "retail or service establishment."

Plaintiffs contend that Congress, the Supreme Court, the DOL, and federal district courts agree that "finance companies" are excluded from the § 207(i) exemption because they lack a retail concept. Plaintiffs further contend that Ace is a "finance company," and, as such, is excluded from the § 207(i) exemption. In particular, Plaintiffs rely on *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290 (1959). In response, Ace asserts that the FLSA, applicable regulations, case law, and public policy all support a finding that the loan officers fall within the retail or service establishment exemption of § 207(i) because, as a mortgage broker, Ace is not part of the financial industry. Ace relies on *Gatto v. Mortgage Specialists of Ill. Inc.*, 442 F. Supp. 2d 529 (N.D. Ill. 2006), in which a federal district court recently addressed the retail or service establishment exemption and held that the exemption applied to a "loan broker."

The Court must review the FLSA, relevant case law, and applicable regulations to rule on this question. The Court first addresses the FLSA. Section 207(i) does not define "retail or service establishment." But § 213(a)(2) (now repealed) does. *Reich*, 3 F.3d at 1183 (holding that although § 213(a)(2) was repealed, the definition of "retail or service establishment" contained in that section still applies to § 207(i)). Section 213(a)(2) defines "retail or service establishment" as "an establishment 75 percentum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C. § 213(a)(2).

11

The DOL regulations articulate some of the characteristics and provide examples of retail or service establishments in 29 C.F.R. § 779.318.  Specifically, the regulations provide that a retail or service establishment:  sells goods or services to the general public; serves the everyday needs of the community in which it is located; and is at the very end of the stream of distribution and disposes its products and skills in small quantities while not taking part in the manufacturing process.  29 C.F.R. § 779.318(a). The regulations also provide "partial lists" of establishments lacking and possessing the retail concept.  29 C.F.R. §§ 779.317, 779.320.  In particular, the regulations state that the "retail concept" does not apply to "credit companies, including small loan and personal loan companies and finance companies" and cites *Mitchell*, 359 U.S. at 290.  29 C.F.R. § 779.317.

In *Mitchell*, the Supreme Court held that an establishment engaged in the business of making personal loans and purchasing conditional sales contracts from dealers in furniture and appliances was not a retail or sales establishment within the meaning of 29 U.S.C. § 213(a)(2).  359 U.S. at 295.  The Court explained that before Congress amended the act in 1949, the DOL had ruled that "personal loan companies and other business entities in what may broadly be called the 'financial industry' were not within the scope of [the § 213(a)(2)] exemption."  *Id.* at 292.  The Court explained that when Congress amended the act in 1949, it provided that pre-1949 rulings and interpretations by the DOL should remain in effect unless inconsistent with the statute as amended.  *Id.*  The Court concluded that Congress, in the 1949 amendment of § 213(a)(2), did not intend to

broaden the scope of that section "so as to embrace personal loan companies."[3]  *Id.*  The
Court concluded that "enterprises in the financial field" remained unaffected by the
amendment of § 213(a)(2) because "there is no concept of retail selling or servicing in
these industries."  *Id.* at 295.  Based on that conclusion, the Supreme Court did not need
to determine whether the business in that case met the definition under 29 U.S.C.
§ 213(a)(2).  *Id.* at 296.

In *Casas v. Conseco Fin. Corp.*, No. 00-1512, 2002 WL 507059, *5 (D. Minn.
March 31, 2002), the court held that the employer finance company failed to establish that
it was a retail or service establishment under the § 207(i) exemption.  The court stated
that "[t]he holding in *Mitchell* that financial companies lack the retail concept to qualify
under the exemption is clear and still good law."  *Id.* at *5.  The employer in *Casas* was
"a finance company engaged in the business of designing, creating and selling lending
products, such as home improvement loans, home equity loans and manufactured and
mobile home mortgages."  *Id.* at *1.  The court held that the employer was "undeniably a
financial company" and therefore fell squarely within the Supreme Court's holding in
*Mitchell*.  *Id.* at *5.  *See also Barnett v. Washington Mut. Bank*, No. 03-00753, 2004 WL
1753400, *6 (N.D. Cal. Aug. 5, 2004) (concluding that under *Mitchell* an employer who
sold loans was not a retail or service establishment).

In *Gatto*, an Illinois court held that the defendant, Mortgage Specialists,
established that it was a retail or service establishment under the § 207(i) exemption.  442
F. Supp. 2d at 542.  As a "loan broker," Mortgage Specialists' primary business is

"finding and closing residential mortgage loans." *Id.* at 532. The plaintiff was a former loan officer for Mortgage Specialists and sued for overtime pay. *Id.* at 531. The *Gatto* court rejected the plaintiff's assertion that Mortgage Specialists could not constitute a retail or service establishment because it was part of the financial industry. *Id.* at 539. The court held that Mortgage Specialists was not part of the "financial industry" as that term was used in *Mitchell. Id.* The court distinguished *Mitchell* because Mortgage Specialists did not make, buy, or sell loans. *Id.* The court stated that Mortgage Specialists is "not a bank, a savings and loan, a finance, credit, or loan company, or any other kind of financial institution, and does not accept consumer deposits or hold funds, unlike the banks, credit companies, and finance companies listed as financial industry establishments in 29 C.F.R. § 779.317." *Id.* The court also distinguished *Conseco* on these same facts. *Id.*

The Court declines to hold that Ace is not part of the financial industry based on the Illinois District Court's reasoning in *Gatto. Gatto* is factually distinguishable because Mortgage Specialists, unlike Ace, did not engage in any direct lending. Here, Ace engages in a small amount of direct lending and is licensed to lend mortgage funds in thirteen states. Thus, based on this factual distinction, the Court declines to follow *Gatto.* Although the Court finds the *Gatto* decision persuasive, ultimately, the Court concludes that the *Gatto* court strained to bring a financial business within the definition of a retail or service establishment on the basis that its activities were limited to brokering, not lending.

The Court ultimately rejects Ace's request that the Court consider the current modern economy and recognize that mortgage brokers did not even exist when the Supreme Court ruled in *Mitchell*.  Although the Court agrees with Ace that the state of the current modern economy and changes that have occurred in the financial industry since the Supreme Court decided *Mitchell* warrant reconsideration of that decision, the Court agrees with the *Casas* court that "these arguments are best directed at Congress or the Department of Labor rather than this Court."  *See Casas*, 2002 WL 507059 at *5.  Based on the Court's review of the applicable statute, regulations, and case law and the record before the Court, the Court finds that Ace is part of the financial industry and, as such, cannot qualify as a retail or service establishment as a matter of law.  Thus, the Court need not analyze the factors contained in 29 C.F.R. § 779.318(a).  *See Casas*, 2002 WL 507059 at 5.  Accordingly, the Court finds that Plaintiffs are entitled to summary judgment.[4]

C.      **Broker Pay Plan**

Next, the parties move for summary judgment on whether, as a matter of law, the

Broker Pay Plan complies with the FLSA.  Section 7(a) of the FLSA delineates the

general requirement that employees be compensated for overtime hours at a rate not less

than one and one-half times their regular compensation.  29 U.S.C. § 207(a).  In 1949

Congress enacted an exception that allows employers to contract with employees for a

guaranteed weekly compensation that includes overtime pay.  *Marshall v. Hamburg Shirt

Co.*, 577 F.2d 444, 447 (8th Cir. 1978).  The exemption from § 207(a) is found at § 7(f) of

the FLSA, which provides:

> No employer shall be deemed to have violated subsection (a) of this section
> by employing any employee for a workweek in excess of the maximum
> workweek applicable to such employee under subsection (a) of this section
> if such employee is employed pursuant to a bona fide individual contract, or
> pursuant to an agreement made as a result of collective bargaining by
> representatives of employees, if the duties of such employee necessitate
> irregular hours of work, and the contract or agreement (1) specifies a
> regular rate of pay of not less than the minimum hourly rate provided in
> subsection (a) or (b) of section 206 of this title (whichever may be
> applicable) and compensation at not less than one and one-half times such
> rate for all hours worked in excess of such maximum workweek, and
> (2) provides a weekly guaranty of pay for not more than sixty hours based
> on the rates so specified.

29 U.S.C. § 207(f).  Thus, the requirements under § 207(f) include:  (1) a bona fide

individual contract; (2) duties that necessitate irregular work hours; (3) a specific regular

rate of pay of minimum wage compensation with one and one-half compensation for

overtime hours; and (4) a weekly guarantee of pay for not more than 60 hours.  The

validity of a guaranteed wage plan depends upon the particular facts in each case.  *Tobin*

16

*v. Little Rock Packing Co.*, 202 F.2d 234, 238 (8th Cir. 1953).

Plaintiffs challenge only the second and third requirements.  Plaintiffs contend that
Ace cannot meet the second requirement because loan officers regularly work more than
forty hours per week.  Thus, Plaintiffs contend that, as a matter of law, Ace cannot
establish that the loan officers work irregular hours.  Plaintiffs assert that Ace cannot
meet the third requirement because, according to Plaintiffs, under the Broker Pay Plan the
rate fluctuates with the commissions earned.  Thus, Plaintiffs contend that, as a matter of
law, Ace does not pay loan officers at a specific regular rate.  Plaintiffs cite *Walling v.
Helmerich & Payne, Inc.*, 323 U.S. 37, 41 (1944), for the proposition that Ace has
attempted by "mathematical manipulation" to compensate loan officers pursuant to a
fictitious regular rate derived by artificially assuming a fixed number of hours worked.

Plaintiffs also contend that Ace does not pay minimum wage "free and clear" and,
instead, impermissibly recoups minimum wage payments made to loan officers in
previous pay periods from commissions earned in subsequent pay periods.  Additionally,
Plaintiffs contend that Ace violated C.F.R. § 516.2(7) because it failed to track the
number of hours that loan officers worked each week and disregarded submitted time
sheets unless loan officers reported more than sixty hours per week.  In conclusion,
Plaintiffs assert that the Court should find that the Broker Pay Plan violates § 207(f)
"such that any loan officer who has worked more than forty hours in a workweek since
the adoption of this plan is owed an overtime premium equal to the total compensation
paid pursuant to the Broker Pay Plan divided by the hours worked by the loan officer

17

times fifty percent for any hours worked that exceed forty hours in a workweek."  (Pls.'
Mem. at 30.)

In response, Ace contends that the Broker Pay Plan meets the irregular hours
requirement.  In particular, Ace contends that loan officers' hours fluctuate based on the
number of leads or inquiries they receive, which are based on Ace's irregular advertising.
Additionally, Ace contends that the amount of work fluctuates with the changes in
interest rates.  Ace also asserts that it pays loan officers at a regular rate.  Ace contends
that, in reality, it pays loan officers on a commission, but with a guaranteed floor and the
possibility of a draw.  Therefore, Ace contends that its regular rate either meets (if the
employee makes no sales during a pay period) or exceeds (if the employee makes
sufficient commission sales) the applicable minimum statutory rate.

The Court finds that genuine issues of material fact preclude a finding that the
Broker Pay Plan does not meet the irregular hours requirement.  The term "irregular hours
of work," requires that an employee's hours "must, in a significant number of weeks,
fluctuate both below forty hours per week as well as above, and the fluctuations below
forty must result from work requirements, not vacations, holidays, illness or reasons
personal to the employee."  *Donovan v. Brown Equip. & Serv. Tool, Inc.*, 666 F.2d 148,
154 (5th Cir. 1982).  The Court finds that there is insufficient evidence in the record to
determine whether the loan officers regularly work more than 40 hours per week.

Additionally, genuine issues of material fact exist regarding whether the loan
officers' duties necessitate irregular hours of work.  *See* 29 C.F.R. § 778.405 ("Even if an

employee does in fact work a variable workweek, the question must still be asked

whether his duties necessitate irregular hours of work."). Here, Ace advertised on an

irregular basis, which affects leads or inquiries and thus the amount of work required.

Further, increases or declines in interest rates make mortgage financing or refinancing

more or less attractive and therefore affect the amount of work. Thus, on the evidence

before the Court, neither party is entitled to summary judgment at this time.

The Court rejects Plaintiffs' assertion that the minimum wage is not paid "free and

clear." Plaintiffs cite 29 C.F.R. § 531.35, which states in relevant part:

> Whether in cash or in facilities, "wages" cannot be considered to have been
> paid by the employer and received by the employee unless they are paid
> finally and unconditionally or "free and clear." The wage requirements of
> the Act will not be met where the employee "kicks-back" directly or
> indirectly to the employer or to another person for the employer's benefit
> the whole or part of the wage delivered to the employee. This is true
> whether the "kick-back" is made in cash or in other than cash.

Here, Ace made minimum wage payments finally and unconditionally. There is no

allegation that the loan officers were required to "kick-back" to Ace or to another person

for Ace's benefit any part of the wages they received. *See* 29 C.F.R. § 531.35 (giving

example of kick-back as requiring an employee to purchase tools necessary for the

employer's work when the cost of such tools cuts into the minimum or overtime wages

required to be paid to the employee). Instead, Plaintiffs contend that Ace does not pay

minimum wage "free and clear" because these payments may be recouped from

commissions earned in subsequent pay periods. The Court disagrees. The actual

payments are final—loan officers are always paid for sixty hours per week, even though

19

their earnings above this amount may fluctuate.  Thus, Plaintiffs are not entitled to summary judgment on this basis.

The Court does find, however, that the Broker Pay Plan violates the FLSA because, pursuant to the Plan, Ace does not pay loan officers at a specific regular rate. Here, the rate fluctuates with the commissions earned.  *See* 29 C.F.R. § 778.408(c) (stating that "it is not possible to enter into a guaranteed pay agreement of the type permitted under section 7(f) with an employee whose regular weekly earnings are made up in part by the payment of regular . . . commissions[.]").  Loan officers receive regular commissions; they receive a percentage from their sales.  Thus, the alleged regular rate of pay of minimum wage is not a "regular" rate because the commissions earned are part of the regular rate.  *See* 29 C.F.R. § 778.408.  Accordingly, the Court finds that the Broker Pay Plan does not meet the regular rate requirement as a matter of law.  Therefore, the Court grants Plaintiffs' request for summary judgment that the Broker Pay Plan violates the FLSA as a matter of law.

### D.    Willful Violation

Next, Plaintiffs assert that Ace willfully violated the FLSA and that, therefore, a three-year statute of limitations is warranted.  A plaintiff must commence a cause of action under the FLSA within two years of the alleged violation "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  A violation is "willful" when the defendant knew his conduct violated the FLSA or showed reckless disregard for whether

his conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiffs bear the burden of showing that a three-year limitations period is warranted. *Theisen v. City of Maple Grove*, 41 F. Supp. 2d 932, 942 (D. Minn. Jan. 15, 1999).

Plaintiffs make several allegations in support of their assertion that Ace willfully violated the FLSA. Plaintiffs allege that Ace failed to investigate whether its commission-only compensation plan violated the FLSA. Plaintiffs also allege that Ace paid loan officers commissions with no overtime compensation for hours worked over forty in a workweek. Plaintiffs also allege that Ace waited six months before changing its pay plan after first being contacted by the DOL regarding the former loan officer's complaint. Further, once Ace implemented the Broker Pay Plan, Plaintiffs allege that Ace disregarded the number of hours that the loan officers worked unless they exceeded sixty hours per week, thereby failing to properly track non-exempt employees' hours worked. Finally, Plaintiffs contend that Ace continued to compensate loan officers in accordance with the Broker Pay Plan after Plaintiffs' counsel provided notice of their contention that the Plan was illegal.

In response, Ace contends that Plaintiffs' request is premature because Plaintiffs have not proven that they are entitled to overtime pay. Alternatively, Ace contends that even if Plaintiffs have established liability, factual questions preclude a finding of willfulness. Specifically, Ace asserts that it believed its workers were exempt commissioned employees under the FLSA and that as soon as it had any reason to

question this assumption, it contacted the DOL and the law firm of Stewart & Irwin.

Further, Ace contends that Price proposed the foundation for the Broker Pay Plan and

made very little edits to it.  Ace also contends that it sought the DOL's approval prior to

implementing the Plan.

Ace then brought its own motion for summary judgment on this issue, asserting

that Plaintiffs have not offered any evidence that would justify a finding of willfulness

with regard to the implementation of the Broker Pay Plan.  In response to Ace's motion,

Plaintiffs essentially assert that a ruling on the issue of willfulness would be premature.

Specifically, Plaintiffs contend that discovery is incomplete regarding whether Ace relied

upon legal advice and sought DOL review before implementing the Broker Pay Plan.

Plaintiffs state that after they are afforded the opportunity to conduct this discovery, "it is

anticipated that [they] will be in a position to present evidence that will support the Court

finding as a matter of law that Ace has committed a willful violation of the FLSA."  (Pls.'

Opp'n to Defs' Mot. for Partial Summ. J. ("Pls.' Opp'n Mot.") at 27.)  Further, Plaintiffs

state that "[they] are still in the process of obtaining e-mail evidence that will support a

finding that Ace violations [sic] of the FLSA were willful before and after the

implementation of the broker pay plan."  (*Id.* at 28.)

The Court denies both parties' requests for summary judgment on the issue of

willfulness.  Here, Plaintiffs have not proven that they are entitled to overtime pay.  *See*

*Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2005 WL 758601, at *15 (D.

Minn. March 30, 2005) ("[U]nder the FLSA, liability is a predicate to a willfulness

analysis and to a finding of liquidated damages . . .").  Thus, a ruling on willfulness is premature.  But even if Plaintiffs had proven liability, neither party is entitled to summary judgment on this issue.  Although Plaintiffs have not proffered any evidence that Ace knew that its conduct was prohibited, genuine issues of material fact exist regarding whether Ace recklessly disregarded the FLSA.  Both parties essentially admit that they are not entitled to summary judgment on this issue.  Ace undermined its own motion for summary judgment by asserting that genuine issues of material fact exist in response to Plaintiffs' motion.  Likewise, Plaintiffs responded to Ace's motion by arguing that they have not had sufficient opportunity to conduct discovery, but expect that after doing so, the evidence *will support* a finding that Ace willfully violated the FLSA.  Accordingly, the Court denies each party's request for summary judgment on willfulness.

### E.   Liquidated Damages

Next, Plaintiffs contend that the loan officers are entitled to liquidated damages. Although the liquidated damages provision as originally enacted was mandatory, Congress amended this provision by enacting section 29 U.S.C. § 260, which gives the court some discretion in awarding liquidated damages. *Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990). The Court, in its sound discretion, may award no liquidated damages if the employer shows that its actions were taken "in good faith" and with "reasonable grounds for believing" they complied with the FLSA. *Id.* To satisfy the subjective good-faith component, the employer bears the burden of proving an "honest intention to ascertain and follow the dictates of the FLSA." *Id.*

Plaintiffs do not challenge the subjective good-faith component; rather, Plaintiffs contend that Ace cannot show that it has an objective and reasonable ground for believing that the failure to pay overtime or minimum wage requirements did not violate the FLSA. Plaintiffs contend that the loan officers are entitled to liquidated damages for both the period prior to the adoption of the Broker Pay Plan and the period after adoption of the Plan. Specifically, Plaintiffs contend that Ace's failure to pay overtime compensation and minimum wages for the period prior to the adoption of the Broker Pay Plan mandates the award of liquidated damages as a matter of law. Plaintiffs contend that Ace did not have an objective basis for believing that the Broker Pay Plan complied with the FLSA because Ace failed to track and compensate loan officers in accordance with their hours worked, failed to obtain an opinion from a law firm regarding the legality of the Broker Pay Plan

24

or inquire as to whether a loan officer's actual hours should be used in the calculation of compensation, and failed to obtain an opinion letter from the DOL approving its plan.

In response, Ace again asserts that Plaintiffs prematurely seek summary judgment on the additional remedy of liquidated damages because Plaintiffs have failed to demonstrate that they are entitled to any overtime wages. The Court agrees and denies Plaintiffs' request on the ground that Plaintiffs have not proven liability. Further, even if Plaintiffs had demonstrated liability, the Court finds that genuine issues of material fact preclude summary judgment. Specifically, a jury's factual determinations concerning willfulness are relevant to the issue of whether the Court should award liquidated damages. Because the jury must resolve factual disputes regarding willfulness that would bear on any determination that Ace acted with an objectively reasonable belief, any award of liquidated damages is premature. Accordingly, Plaintiffs are not entitled to summary judgment on liquidated damages.

## II. Motion for Second Notice, to Compel Production of Updated Class List, and for Equitable Tolling

On October 31, 2005, this Court granted Plaintiffs' request that judicial notice of this lawsuit be sent to all loan officers employed by Ace during the previous three years. Plaintiffs now request permission to send a second notice of this lawsuit to all loan officers who have been employed by Ace between July 18, 2002, and July 18, 2005. Plaintiffs assert that a second notice is necessary for two reasons. First, Plaintiffs contend that notice is necessary in order to inform loan officers employed since June 2005 that

Plaintiffs are challenging Ace's Broker Pay Plan in this action.  Second, Plaintiffs

contend that Ace has engaged in a widespread campaign to improperly influence,

mislead, and discourage putative plaintiffs from joining this case, thereby diminishing the

effect of the first notice. Accordingly, Plaintiffs request that the second notice include

corrective language aimed at overcoming the alleged detrimental effect of Ace's alleged

improper communications.  In addition, Plaintiffs request that Ace produce an updated list

of loan officers for facilitation of corrective notice and that the Court toll the statute of

limitations to preserve the claims of potential collective-action members that may have

been destroyed by Ace's alleged improper communications.

The Court has "both the duty and the broad authority to exercise control over a

class action and to enter appropriate orders governing the conduct of counsel and parties."

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).  The Court rejects Plaintiffs' assertion

that a second notice is necessary.  First, the Court rejects Plaintiffs' assertion that a

second notice is needed to inform loan officers employed since June 2005 that Plaintiffs

are challenging Ace's Broker Pay Plan in this action.  Here, the first notice authorized by

the Court on October 31, 2005, informed Ace's loan officers that Plaintiffs were

challenging that plan.  In particular, the first notice stated:

> [Plaintiffs] allege that they are owed an overtime premium under the Fair
> Labor Standards Act ("FLSA"), . . . for work in excess of forty (40) hours
> per week they performed during the period from July 20, 2002, *and present*.

(Doc. No. 62 at 2 (emphasis added).)  Because Ace implemented the Broker Pay Plan on

June 1, 2005, the first notice informed loan officers that Plaintiffs are challenging the

26

legality of the Broker Pay Plan.

Second, the Court rejects Plaintiffs' assertion that Ace has engaged in a widespread campaign to improperly influence, mislead, and discourage putative plaintiffs from joining this case, thereby diminishing the effect of the first notice. Plaintiffs previously requested that the first notice include corrective language, based on allegations that Ace engaged in coercive correspondence with loan officers regarding this lawsuit. Specifically, Plaintiffs alleged that Hall disseminated a coercive and misleading e-mail and memorandum regarding this lawsuit and that Ace held meetings in which it discouraged loan officers from joining the lawsuit. The Court denied Plaintiffs' request. Plaintiffs now propose a second notice featuring similar punitive language as was requested for inclusion in the first notice and that references the e-mail and memorandum from Hall.

The Court rejects Plaintiffs' assertion that an e-mail and memorandum regarding the lawsuit that Hall sent to loan officers a day after service of the Complaint was coercive and misleading. In its Order denying Plaintiffs' request to include corrective language in the first notice, the Court found:

> [There is no basis to conclude that] A[ce]'s communication with its employees regarding the lawsuit intimidated or discouraged employees from joining the lawsuit. The employees could have interpreted the purpose of A[ce]'s memorandum as being informative, in accordance with the memorandum's stated purpose.

(Doc. No. 66 at 9.) The Court sees no reason to revisit its earlier findings regarding the same evidence.

27

Additionally, the Court finds that the conduct complained of since the Court's first ruling on this issue does not warrant issuance of a corrective notice.  After reviewing the declarations that Plaintiffs have submitted, the Court finds that the Assistant Vice Presidents' alleged statements do not establish that Ace has engaged in a campaign to intimidate employees.  Instead, most of the statements merely express opinions about the validity of the lawsuit.  Although there are a few statements in the declarations that, if true, raise issues of possible misconduct, there is substantial reason to question the credibility of each declarant.  At any rate, the Court finds that these alleged statements alone do not justify issuing a second class-wide notice containing corrective language.  Accordingly, the Court denies Plaintiffs' request for a corrective notice.  Having denied Plaintiffs' request to issue a second notice, the Court also denies Plaintiffs' requests that Ace produce an updated list of loan officers and that the Court toll the statute of limitations.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that**:**

1.      Plaintiffs' Amended Motion for Partial Summary Judgment (Doc. No. 173) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.      Plaintiffs' request that the Court find that, as a matter of law, Ace does not qualify for the retail or service establishment exemption is **GRANTED**.

b.      Plaintiffs' request that the Court find that, as a matter of law,

the Broker Pay Plan violates the FLSA is **GRANTED**.

c.      Plaintiffs' request that the Court find that, as a matter of law,

a three-year statute of limitations applies because Ace willfully violated the

FLSA is **DENIED**.

d.      Plaintiffs' request that the Court find that, as a matter of law,

Plaintiffs are entitled to liquidated damages is **DENIED**.

2.      Defendants' Motion for Partial Summary Judgment (Doc. No. 192) is

**DENIED**.

3.      Plaintiffs' Motion for Second Notice, to Compel Production of Updated

Class List, and for Equitable Tolling (Doc. No. 174) is **DENIED**.


Dated:  April 16, 2007            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court